ROBERT W. DICKERSON, (SBN 89367)
  *rdickerson@zuberlaw.com*
THOMAS F. ZUBER (SBN 226260*)*
  *tzuber@zuberlaw.com*
MEREDITH A. SMITH (SBN 281120)
  *msmith@zuberlaw.com*
**ZUBER LAWLER & DEL DUCA LLP**
350 S. Grand Avenue, 32nd Floor
Los Angeles, California 90071
Telephone: (213) 596-5620
Facsimile: (213) 596-5621

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Aerial West, LLC,<br><br>Plaintiff,<br><br>v.<br><br>Drone World, LLC, Stephen Paul McKenna, and DOES 1-10, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>**(1) FALSE DESIGNATION OF ORIGIN (COUNTERFEITING);**<br>**(2) COMMON LAW TRADEMARK INFRINGEMENT;**<br>**(3) FALSE ADVERTISING AND UNFAIR COMPETITION UNDER CAL. BUS. & PROF. CODE §§ 17200 *ET SEQ*.;**<br>**(4) UNFAIR COMPETITION (COMMON LAW);**<br>**(5) UNJUST ENRICHMENT**<br><br>**DEMAND FOR JURY TRIAL** |

0005-1006 / 1113937.1

Case 2:18-cv-02288-JAK-SS Document 1 Filed 03/20/18 Page 2 of 16 Page ID #:2

# INTRODUCTION

1. This dispute arises from the willful infringement by Defendants Drone World, LLC ("Drone World"), Stephen Paul McKenna ("McKenna"), and DOES 1-10 (collectively "Defendants") of the MAVMOUNT trademark and trade dress belonging to Plaintiff Aerial West, LLC ("Aerial West"), and the intentional and knowing sale by Defendants of counterfeit goods in connection with that infringement.

2. Aerial West's MAVMOUNT tablet adapter is one of the most respected brands—if not the most respected brand—of tablet adapter mounts in the drone industry. The MAVMOUNT adapter allows the "pilot" of an airborne drone to use a compatible tablet (iPhone, iPad, etc.) to control and operate the drone. Customers have paid as much as four times more for a MAVMOUNT adapter than for the lesser-quality competitive brands. The MAVMOUNT adapter is unquestionably superior in quality and design, is recognized as such in the industry and by consumers, is considered a luxury product, and is in high demand.

3. Drone World, owned and operated by McKenna, is an online retailer of drones and related products, and became a customer of Aerial West shortly after Aerial West launched the MAVMOUNT adapter product line in December 2016, and continued to be a customer for months thereafter. Drone World would purchase the MAVMOUNT product from Aerial West for resale. At one point, when Drone World was purchasing authentic MAVMOUNT products from Aerial West to re-sell, McKenna told Aerial West that Drone World sold 20-40 MAVMOUNT adapters per week. In fact, from January 2017 through August 2017, Drone World ordered, paid for, and received a total of approximately 900 MAVMOUNT adapters from Aerial West, to meet the demand for the product from Drone World's customers.

4. In September 2017, Drone World submitted an order to Aerial West for 150 more MAVMOUNT adapters, which Drone World indicated at the time was extremely urgent given the demand for the product. On September 21, 2017,

however, Drone World suddenly canceled that "extremely urgent" order, and thereafter ceased placing any orders with Aerial West.

Aerial West has since discovered that instead of continuing to purchase authentic MAVMOUNT product from Aerial West, Drone World began selling, and continues to sell, low quality counterfeit tablet adapter mounts bearing the MAVMOUNT mark and duplicating the product's trade dress. Aerial West is informed and believes that Defendants sent an authentic MAVMOUNT product to a manufacturer to obtain a knock-off, counterfeit product of lower quality that Drone World could sell at a lower price.

After Drone World ceased ordering product from Aerial West in September 2017, McKenna contacted Aerial West only to inquire about Aerial West's upgraded MAVMOUNT 3.0, presumably so that Defendants could purchase the product in order to counterfeit it as well, and/or to create a façade of legitimacy for their counterfeiting operation.

The willfulness of the Defendants' infringement, counterfeiting and unfair competition in this case is undeniable, and reprehensible, taking advantage not only of Aerial West, but of consumers who bought the low quality counterfeit product thinking they were buying the authentic, high quality, MAVMOUNT product. Plaintiff believes that the evidence at trial will show that Defendants' conduct – counterfeiting, blatant trademark and trade dress infringement, taking advantage of the reputation earned by high-end brands in the drone industry, and blatantly falsely advertising their products – is part of Defendants' playbook. The conduct in this case therefore justifies not only injunctive relief and damages, but also an award of enhanced damages, punitive damages, expenses and attorney fees to the maximum extent allowed by law.

In light of the foregoing, for its Complaint herein against Defendants, Aerial West alleges as follows:

///

# THE PARTIES

1. Plaintiff Aerial West, LLC, d.b.a. MavMount ("Aerial West") is a California corporation having its principal place of business at 834 15th Place #B, Hermosa Beach, California 90254.

2. Defendant Drone World, LLC ("Drone World") is believed to be a California corporation having its principal place of business at 22815 Savi Ranch Parkway Unit E, Yorba Linda, California 92887. Aerial West is informed and believes that Drone World does business on a regular basis in California and within this judicial district, including but not limited to business conducted by means of a website, www.drone-world.com, at which Drone World offers and sells drones and other products, including once selling the authentic MAVMOUNT products purchased from Arial West, and subsequently the knock-off, counterfeit "MAVMOUNT" products. Therefore, this court has personal jurisdiction over Drone World.

3. Defendant Stephen Paul McKenna ("McKenna") is an individual. Aerial West is informed and believes that McKenna is the owner of, and controls all activity of, Drone World. Aerial West is informed and believes that McKenna resides in and/or does business on a regular basis in California and within this judicial district. Therefore, this court has personal jurisdiction over McKenna. Aerial West is also informed and believes that all actions and wrongful conduct herein alleged as to Drone World (and its other employees and agents) was at the direction and under the control of McKenna, and that McKenna is the alter ego of Drone World.

4. There may be other individuals and entities both within or outside the Drone World corporate family who have some involvement and liability for the wrongful acts herein alleged, including conspiring with other Defendants. Therefore, as their true names or capacities are at this time unknown to Aerial West, they are sued herein under the fictitious names DOES 1 through 10, inclusive (hereinafter, the

///

term "Defendants" will refer to Drone World, McKenna, and DOES 1 through 10 collectively).

## JURISDICTION AND VENUE

5. This action arises in part under the laws of the United States, 15 U.S.C §§ 1025 *et seq.* This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), and has supplemental jurisdiction pursuant to 28 U.S.C. §1367 (a) of the state law claims, all of which arise out of and have a nexus to the facts giving rise to the federal claim, and therefore form a part of the same case or controversy under Article III of the United States Constitution.

6. Venue is proper in this district under 28 U.S.C. §§ 1391(b)–(d) and 1400(b), among other bases. Defendants have committed unlawful acts in this judicial district. Defendants either reside, have done business in this venue, or may be found in this judicial district.

## FACTS COMMON TO ALL CLAIMS

7. Aerial West manufactures tablet adapter mounts marketed under the brand name and trademark MAVMOUNT. The MAVMOUNT adapter is a complete system that allows for a compatible tablet to be used with the very popular MAVIC®, MAVIC® AIR, and SPARK® drones (sold by a third party SZ DJI Technology Co., Ltd.). Aerial West markets and sells the MAVMOUNT adapter directly on its website, www.mavmount.com, as well to other retailers and distributors, including Drone World, an online retailer of drones and drone accessories.

8. Aerial West began developing the MAVMOUNT adapter in September 2016. Aerial West expended considerable sums of money, as well as time and effort of employees and agents of Aerial West, to develop the MAVMOUNT adapter. Development involved designing, manufacturing, and testing an attractive, functional, and high-quality product, as well as launching a strategic marketing campaign so as to promote sales and boost brand-name recognition. As a result of Aerial West's investment and sweat equity, the MAVMOUNT product was quickly

established as the highest quality, luxury brand of tablet adapter mounts and sells at a price point that is up to four times the price for its most popular competitor on Amazon. A true and correct copy of a photograph of an authentic MAVMOUNT adapter (with tablet attached) that is included on Aerial West's website is attached as Exhibit A.

9. On December 1, 2016, Aerial West launched the MAVMOUNT adapter, two months after the DJI MAVIC® drone went to market in October 2016. The MAVMOUNT product generated immediate favorable recognition and demand. The very next day, on December 2, 2016, Drone World ordered its first MAVMOUNT product from Aerial West. At that time, Aerial West asked McKenna if Drone World would be interested in distributing the MAVMOUNT adapter. McKenna responded: "Okay, we'll test and letcha know, it would be for our high end Mavic customers."

10. On January 11, 2017, McKenna requested samples of the MAVMOUNT adapter with a gold base (as shown in Exhibit A) and ordered 100 MAVMOUNT products. Drone World continued to order MAVMOUNT products from Aerial West thereafter.

11. On July 23, 2017, McKenna told Aerial West that Drone World would be out of stock of MAVMOUNT products in a week and needed its order as soon as possible. McKenna told Aerial West at that time that he estimated that Drone World was selling 20-40 MAVMOUNT products per week. From January 2017 through August 2017, Drone World ordered, paid for, and received approximately 900 MAVMOUNT products from Aerial West, which roughly equates to about 30 MAVMOUNT products per week during that time period.

12. Then, on September 8, 2017, Drone World ordered 100 MAVMOUNT adapters, and specifically requested that 20-30 of them be delivered by the following week, citing the high demand for the product. Three days later, on September 11, 2017, Drone World increased its order by 50 additional products, such that the total

amount ordered for September was 150 units.  Then, just six days later, on September 21, 2017, Drone World abruptly, surprisingly, and without warning, canceled its order.  In an email, a Drone World representative told Aerial West: "We appear to be good right now.  Steve [McKenna] had stock I was unaware of.  Steve will reach out when we need more probably."  On information and belief, this was a knowingly false and fraudulent statement, intended to deceive Aerial West as to the fact that Defendants were instead going to source and sell counterfeit products.

13.     Thereafter, Drone World did not place any new orders for MAVMOUNT products from Aerial West.  Instead, Aerial West discovered that Drone World was selling, and has continued to sell, knock-off counterfeit tablet adapter mounts bearing the MAVMOUNT mark and in the same shape, style and overall appearance (trade dress) of the MAVMOUNT product, thus intentionally copying (in appearance but not quality) Aerial West's authentic MAVMOUNT product.  The Drone World "MAVMOUNT" products are knock-offs.  True and correct copies of photographs showing side-by-side comparisons of authentic Aerial West MAVMOUNT adapters with Drone World's knock-off counterfeit "MAVMOUNT" tablet adapters are attached as Exhibit B.  True and correct photographs showing Defendants' infringing packaging for their knock-off, counterfeit products, and its knock-off gold-base product, are attached as Exhibit C.

14.     Drone World has used and continues to use its website and YouTube channel to promote, advertise, and offer to sell the counterfeit "MAVMOUNT" products, individually and in packages.  Drone World has used and continues to use Google marketing and analytics to promote and advertise its counterfeit products using Aerial West's MAVMOUNT trademark and trade dress.   On Amazon, Drone World sells the counterfeit "MAVMOUNT" products at a lower price than the authentic MAVMOUNT products sold by Aerial West, and with a lanyard accessory upgrade for not additional cost.

/ / /

15. Defendants have initiated a scheme to divert customers of Aerial West's business to Defendants and to profit from Aerial West's goodwill and reputation. The use of the infringing and imitating MAVMOUNT mark is without consent of Aerial West and is damaging Aerial West in its business and reputation by means of lost sales and diminution of goodwill and reputation.

16. This conduct of Defendants is deliberate, deceitful, and specifically intended to enrich Defendants and to harm and damage Aerial West. Defendants' use of the mark MAVMOUNT and the MAVMOUNT trade dress is likely to cause confusion, mistake, and deceive third parties as to the affiliation, connection, or association of Defendants with Aerial West and as to whether or not Aerial West has anything to do with the origin, sponsorship, or approval of the goods, services, or other commercial activities of Defendants. Defendants' use of the MAVMOUNT mark and trade dress to attract customers misrepresents the nature, characteristics, qualities, and/or origin of Defendants' goods, services, and commercial activities.

17. Defendants have willfully infringed upon and diluted Aerial West's trademark MAVMOUNT which is distinctive and famous within the meaning of 15 U.S.C. § 1125(c). In particular, the MAVMOUNT mark will suffer because its reputation as a high-end, luxury brand is now being associated with a low-quality counterfeit product that was sourced and now sold by Defendants.

18. The conduct of Defendants has occurred in, continues to occur in, and has caused damage to Aerial West in this District and elsewhere.

19. Aerial West has filed an application to register the MAVMOUNT trademark with the United States Patent and Trademark Office ("USPTO"), which application is currently pending, awaiting first response. A search of the USPTO database of registered trademarks and applications to register trademarks does not disclose any other MAVMOUNT trademark. This confirms that Aerial West's MAVMOUNT trademark is inherently distinctive, arbitrary and fanciful, and therefore entitled to protection and registration with the USPTO. When the USPTO

does issue a registration for Aerial West's MAVMOUNT trademark, Aerial West will at that time seek leave to amend this Complaint to assert other claims against Defendants based upon the federal registration.

## FIRST CLAIM FOR RELIEF

### False Designation of Origin under 15 U.S.C. § 1125

20. Aerial West incorporates by reference each and every allegation contained in the foregoing paragraphs, as though fully set forth here.

21. Defendants have violated 15 U.S.C. § 1125(a) in that they have on or in connection with Defendants' goods or services, used the trademark MAVMOUNT, and have copied the shape, style and overall appearance of the MAVMOUNT product, and have offered for sale and sold counterfeit products, passing them off as authentic MAVMOUNT products, each of which represents a false designation of origin, false or misleading description and/or a misrepresentation of fact likely to cause confusion, mistake, or deceive as to the affiliation, connection, or association of Defendants with Aerial West or which is likely to cause confusion, mistake, or deceive as to whether Aerial West has anything to do with the origin, sponsorship, or approval of the goods, services, or commercial activities of Defendants.

22. There have already been instances of actual confusion. For example, Aerial West has received emails from consumers who purchased Defendants' low quality product, thinking it was an authentic MAVMOUNT product from Aerial West, and who complained to Aerial West about the poor quality of the counterfeit product obtained from Defendants. For example, one such customer wrote: "*Hi there, So I purchased a mavmount 2.0 from a company called drone world and I was wondering if other companies carry your products. Cause the quality didn't seem the same.*" Another person canceled their pending order to Aerial West, having been tricked by Defendants into believing they could buy an authentic MAVMOUNT product from Drone World for a cheaper price: "*Hello. Can you please cancel my order 12843. This was just placed today 1/28/18. The reason for my cancellation is*

*because I found one of your authorized distributors. which sells the gold version of your mavmount. Thank you. Greg"*

23. Defendants have similarly violated 15 U.S.C. § 1125(a) in that their commercial advertising or promotion using the name MAVMOUNT misrepresents the nature, characteristics, qualities, and/or geographic origin of their goods, services, or commercial activities.

24. Defendants have willfully infringed upon and diluted Aerial West's trademark MAVMOUNT which is distinctive and famous within the meaning of 15 U.S.C. § 1125(c) and Cal. Bus. & Prof. Code §§ 14245 and 14247. In particular, the MAVMOUNT mark will suffer because its reputation as a high-quality, high-end, luxury brand is now being associated with a low-quality counterfeit product through the wrongful conduct of Defendants.

25. As a direct and proximate result of their wrongful conduct, Defendants have realized and continue to realize profits and other benefits rightfully belonging to Aerial West.

26. Defendants' wrongful conduct has also caused and is causing substantial and irreparable injury and damage to Aerial West in an amount not capable of determination, and, unless restrained, will cause further irreparable injury, leaving Aerial West with no adequate remedy at law.

27. Based on the foregoing, Aerial West is entitled to have Defendants disgorge all profits earned (directly or indirectly) as a result of Defendants' violation of 15 U.S.C. § 1125, any damages sustained by Aerial West, the costs of the action, and its attorney fees.

28. The wrongful conduct above was committed intentionally, willfully, and with malice, therefore entitling Aerial West to enhanced and punitive damages.

/ / /

/ / /

/ / /

## SECOND CLAIM FOR RELIEF

### Common Law Infringement of Trademark

29. Aerial West incorporates the allegations of the foregoing paragraphs as though fully set forth here.

30. Aerial West was the first entity to use the MAVMOUNT trademark and the MAVMOUNT trade dress (collectively, the "Marks") in intrastate and interstate commerce, and that use predated any use of the Marks by any Defendant. Aerial West therefore has ownership of and a protectable interest in the MAVMOUNT Marks at common law.

31. Aerial West owns and enjoys common law trademark rights in these Marks, which rights are superior to any rights that Defendants (severally or jointly) have or may claim to have in the Marks (or any of them). The MAVMOUNT mark and trade dress are inherently distinctive and have acquired secondary meaning with the trade and the consuming public, and/or have become distinctive in the minds of customers. The abject copying by Defendants confirms these facts.

32. Drone World's use of the Marks in connection with the advertising, distribution, marketing, promotion, offer for sale, and/or sale of its products is likely to cause confusion and, upon information and belief, has caused confusion as to the source of Defendant's products, in that customers will be likely to associate or have associated such products as originating with Aerial West, all to their detriment. As alleged above, there have already been multiple instances of actual confusion.

33. Defendants' conduct constitutes common law trademark infringement and violation of Cal. Bus. & Prof. Code §§ 14200 *et seq.*

34. By reason of Defendants' actions as alleged herein, Aerial West has been damaged in an amount not presently known, and such damage will continue and increase unless and until Defendants are enjoined from continuing their wrongful acts.

/ / /

35. Based on the foregoing, Aerial West is entitled to have Defendants disgorge all profits earned (directly or indirectly) as a result of Defendants' infringement, any damages sustained by Aerial West, the costs of the action, and its attorney fees.

36. The wrongful conduct above was committed intentionally, willfully, and with malice, therefore entitling Aerial West to enhanced and punitive damages.

## THIRD CLAIM FOR RELIEF

### False Advertising and Unfair Competition under Cal. Bus. & Prof. Code §§ 17200 *et seq.*

37. Aerial West incorporates the allegations in the foregoing paragraphs, as though fully set forth here.

38. The actions of Defendants as described above, whether individually or as agents, representatives, or employees of one another, constitute unfair competition under Cal. Bus. & Prof. Code §§ 17200 *et seq.*, which has proximately caused damage to Aerial West.

39. The actions of Defendants as described above, whether individually or as agents, representatives, or employees of one another, constitute false advertising under Cal. Bus. & Prof. Code §§ 17500 *et seq.*, which has proximately caused damage to Aerial West, and which damage will continue until Defendants are enjoined from their wrongful conduct.

40. The wrongful conduct above was committed intentionally, willfully, and with malice, therefore entitling Aerial West to enhanced and punitive damages.

## FOURTH CLAIM FOR RELIEF

### Common Law Unfair Competition

41. Aerial West incorporates the allegations in the foregoing paragraphs, as though fully set forth here.

42. The actions of Defendants as described above, whether individually or as agents, representatives, or employees of one another, are wrongful and are likely

to cause confusion, to cause misrepresentation, to cause mistake, and/or to deceive the public as to the affiliation, approval, sponsorship and connection between Aerial West and Defendants, and thus constitute unfair competition at common law.

43. The actions of Defendants as described above, whether individually or as agents, representatives, or employees of one another, have proximately caused damage to Aerial West and which damage will continue until Defendants are enjoined from their wrongful conduct.

44. The wrongful conduct above was committed intentionally, willfully, and with malice, therefore entitling Aerial West to enhanced and punitive damages.

## FIFITH CLAIM FOR RELIEF

### Unjust Enrichment

45. Aerial West incorporates the allegations in the foregoing paragraphs, as though fully set forth here.

46. As alleged above, Aerial West has provided to Defendants, and particularly to the Defendants, things of great value in the reasonable and justified expectation of compensation in return; Defendants, and particularly the Defendants, have acknowledged, accepted and very substantially benefited from the things provided to them by Aerial West; and it would inequitable, indeed unconscionable, for Defendants to enjoy the benefits, rewards and revenue they are now deriving from the fruits of Aerial West's efforts, investments and other expense and sweat equity in the design, development and marketing of the authentic MAVMOUNT products.

47. Therefore, Defendants and each of them have been very substantially unjustly enriched, and continue to be so, at the expense of Aerial West.

48. One or more of Defendants have infringed, and/or has contributed to the infringement, of Aerial West's MAVMOUNT trademark, which infringement is imputed to the other Defendants.

/ / /

49. For their own profit and advantage, one or more of the Defendants are misappropriating the MAVMOUNT brand and Marks, which Aerial West has invested heavily in and is highly regarded amongst customers and potential customers. Defendants have, without authorization from Aerial West, marketed and sold tablet mount holders with the MAVMOUNT trademark and trade dress, which constitutes trademark infringement in violation of common law.

50. As a direct and proximate result of their wrongful conduct, Defendants have realized and continue to realize profits and other benefits rightfully belonging to Aerial West.

51. Based on the foregoing, Aerial West is entitled to have Defendants disgorge all revenue earned (directly or indirectly) as a result of Defendants' trademark infringement, any damages sustained by Aerial West, the costs of the action, and its attorney fees.

52. Defendants' infringing conduct has also caused and is causing substantial and irreparable injury and damage to Aerial West in an amount not capable of determination, and, unless restrained, will cause further irreparable injury, leaving Aerial West with no adequate remedy at law.

53. The wrongful conduct above was committed intentionally, willfully, and with malice, therefore entitling Aerial West to enhanced and punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Aerial West prays for judgment against Defendants, jointly and severally, as follows:

1. For compensatory damages according to proof, including actual and/or statutory damages, and collateral damage for false designation of origin, false or misleading description of fact, false or misleading representation of fact, trademark dilution, trademark infringement, unfair competition and false advertising, including all of the revenue and profits obtained by Defendants as a result of their wrongful conduct;

2. That such conduct was willful and malicious;

3. That Defendants and each of them, and their subsidiaries, dba's, divisions, affiliates, parents, successors, assigns, officers, agents, representatives, servants, and employees, and all persons in active concert or participation with them or any of them, be preliminarily and permanently enjoined from their wrongful conduct;

4. That all of Defendants' infringing products in inventory or in route be impounded for the benefit of Aerial West;

5. That McKenna be found to be the alter ego of Drone World, and therefore personally liable jointly and severally with Drone World;

6. That Defendants be preliminarily ordered to pay all revenue received in the past or in the future by Defendants on account of their infringement into an interest-bearing escrow account;

7. That Defendants be ordered to pay all costs incurred by Aerial West in the prosecution of this civil action, including, but not limited to, expert witness fees, costs, and attorney's fees;

8. For enhanced, exemplary and punitive damages to the full extent allowed by law; and

9. That Aerial West have such other and further relief as this Court deems just and proper.

Dated:  March 20, 2018                    Respectfully submitted,

**ZUBER LAWLER & DEL DUCA LLP**
ROBERT W. DICKERSON

By: ___*/s/Robert W. Dickerson*___
Attorneys for Plaintiff

**DEMAND FOR JURY**

Plaintiff hereby demands a jury trial as to all issues properly submitted to the jury, and any issue as to which the Court may seek an advisory verdict from the jury.

Dated: March 20, 2018  Respectfully submitted,

**ZUBER LAWLER & DEL DUCA LLP**
ROBERT W. DICKERSON

By: */s/Robert W. Dickerson*
Attorneys for Plaintiff